UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHRISTOPHER McCLOUD,

                                                    Plaintiff,

          vs.

RICHARD ROY, Deputy Commissioner,
Greene Correctional  Facility; CHRISTOPHER
TURRIGLIO, Correction Officer, MR. BEHRLE,                    9:08-CV-839
Superintendent, Greene Correctional Facility;                (LEK/ATB)
PHILIP HEATH, Deputy Superintendent, Greene
Correctional Facility; MR. MIZGALA, Deputy
Superintendent, Greene Correctional Facility;
MRS. SMITH, Doctor, Greene Correctional
Facility; JANE/JOHN DOES, Mail Clerks,
Greene Correctional Facility,

                                                    Defendants.
_____

CHRISTOPHER McCLOUD, Plaintiff *Pro Se*
RICHARD LOMBARDO, Asst. Attorney General for Defendants
STEVEN H. SCHWARTZ, Asst. Attorney General for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

### REPORT-RECOMMENDATION

       This matter was referred to Magistrate Judge Gustave J. Di Bianco for Report

and Recommendation by the Honorable Lawrence E. Kahn, Senior United States

District Judge pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

Upon Magistrate Judge Di Bianco's retirement on January 4, 2010, the case was

referred to me by the Honorable Norman A. Mordue, Chief United States District

Judge. (Dkt. No. 54).

       Plaintiff alleges in his complaint that defendants denied him access to the courts

and constitutionally adequate medical care while plaintiff was an inmate in the custody of the Department of Correctional Services ("DOCS") at Greene Correctional Facility ("Greene").  (Compl. ¶¶ 12–46.)  Plaintiff also complains that he was transferred in retaliation for filing grievances.  (Compl. ¶ 49).

Plaintiff's First Cause of Action is against defendants Turriglio, Behrle, Heath, Mizgala, and "Jane/Jonh[sic] Does,"[1] alleging unlawful interference with legal correspondence and access to courts, based on violations of the First and Fourteenth Amendments.[2]  (Compl. ¶47).  The Second Cause of Action is against defendant

---

[1] No John or Jane Doe mail clerks  were ever identified or served in this action.  Since this court is recommending dismissal of the mail interference/access to courts claim on the merits, the complaint may also be dismissed as against any unnamed mail clerks.

[2] Plaintiff fails to cite the Fourteenth Amendment, which is clearly implicated in a denial of access to the courts claim, but also cites the Fifth and Seventeenth Amendments, N.Y.P.L. sections 20.00, 105.15, 195.00, 195.05; 18 U.S.C. sections 241, 242, 371, 1503, 1702, 1703; and 42 U.S.C. sections 1983, 1985, 1986, 1987.  (Compl. ¶ 47.)  The N.Y.P.L sections are criminal sections that are enforced by the District Attorney, and the sections of Title 18 of the United States Code are also criminal sections that afford Plaintiff no cause of action.  *See Keady v. Nike, Inc.*, 116 F. Supp. 2d 428, 435-36 (S.D.N.Y. 2000) (no private right of action to enforce federal criminal statutes), *vacated in part on other grounds*, 23 Fed. Appx. 29 (2d Cir. 2001); *Dugar v. Coughlin*, 613 F. Supp. 849, 852 n.1 (S.D.N.Y. 1985) (same).

The relevant part of section 1985 provides a narrower protection that section 1983. Section 1985(3) prohibits conspiracies to deprive persons of equal protection of the law.  *Davila v. Secure Pharm. Plus*, 329 F. Supp. 2d 311, 316 (D. Conn. 2004) (citing 28 U.S.C. § 1985(3). Section 1986 provides that every person who is aware of a conspiracy under section 1985, but does not prevent or aid in preventing the injury, while having the power to do so will be liable in damages. 28 U.S.C. § 1986.  A claim under section 1986 is contingent to a valid claim under section 1985 and must be commenced within one year after the cause of action accrued.  *Id.*

The protection afforded by section 1985 is "narrower"than that afforded by section 1983 because section 1985 requires the conspiracy to be motivated by a racial or other class-based animus.  *Davila*, 329 F. Supp. 2d at 317.  In order to state a claim under section 1985(3), plaintiff must allege a conspiracy for the purpose of depriving him of equal protection; an overt act in furtherance of that conspiracy; and an injury to plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States.  *Id.*  (citing *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999)).  Plaintiff in this case simply sprinkles citations to sections 1985 and 1986 into his complaint.  He does not allege a class-based conspiracy of any kind, and thus, section

Smith, alleging a denial of proper medical care, based on a violation of the Eighth and Fourteenth Amendments.[3]  (Compl. ¶ 48).  Plaintiff's Third Cause of Action is against defendant Behrle, alleging retaliatory transfer, and is based on violations of the First and Fourteenth Amendments.[4]  (Compl. ¶ 49).  The Fourth Cause of Action is against defendant DOCS, alleging that DOCS failed to properly train or supervise its "agents" who caused the deprivation of plaintiff's rights, and is based on violations of the First, Eighth and Fourteenth Amendments.[5]  (Compl. ¶ 50.)  Plaintiff seeks declaratory relief and significant monetary damages.  (Compl. ¶¶ 52–61.)

Presently before this court are four motions pursuant to FED. R. CIV. P. 56: plaintiff's motion for partial summary judgment as to defendant Turriglio (Dkt. No. 36), plaintiff's motion for partial summary judgment as to defendant Smith (Dkt. No. 38), plaintiff's motion for partial summary judgment as to defendant Mizgala (Dkt. No. 43), and defendants' cross-motion for summary judgment, requesting dismissal of

---

1985 is not applicable to this case.  Since section 1985 is inapplicable, plaintiff may not base any cause of action on section 1986.  To the extent that plaintiff alleges a "conspiracy," he may base whatever claim he has on section 1983.

On its face, 42 U.S.C. § 1987 refers to certain federal officers initiating prosecutions and does not authorize a private right of action.  *See Carpenter v. Ashby*, No. 08-4021, 2009 U.S. App. LEXIS 20265, *9 (3d Cir. Sept. 10, 2009).

[3] Plaintiff also cites the Fifth Amendment, which the court notes is inapplicable.  (Compl. ¶ 48.)

[4] Plaintiff also cites the Fifth and Eighth Amendments, which are inapplicable to a cause of action based on an alleged retaliatory transfer.  (Compl. ¶ 49.)

[5] On August 26, 2008, U.S. District Judge Lawrence E. Kahn dismissed the complaint against the Department of Corrections based on the Eleventh Amendment.  (Dkt. No. 8.)  Because plaintiff's Fourth Cause of Action relates only to DOCS, this court recommends dismissal of plaintiff's Fourth Cause of Action.

the entire complaint (Dkt. No. 49).  Defendant's motion also responds to plaintiff's

motions for partial summary judgment, and plaintiff has responded in opposition to

defendants' motion. (Dkt. No. 51.)  For the following reasons, this court finds that

plaintiff's first and second causes of action should be dismissed based upon plaintiff's

failure to raise a genuine issue of material fact regarding either his access to courts or

his medical care claims; his third cause of action should be dismissed based on his

failure to exhaust his administrative remedies; and his fourth cause of action should be

dismissed on Eleventh Amendment grounds.  As a result, this court recommends

denying plaintiff's three motions for partial summary judgment and granting

defendants' cross-motion for summary judgment, dismissing the complaint.

## DISCUSSION

I.   **Facts**

Plaintiff's allegations stem from two issues: his failure to receive a bottom bunk

pass and alleged tampering with legal mail.  (Compl. ¶¶ 13, 18–38.)  Plaintiff met with

defendant Dr. Smith on March 16, 2007, and May 4, 2007, when plaintiff claims he

informed Dr. Smith of a rod in Plaintiff's leg that caused him pain and requested a

bottom bunk pass.  (Compl. ¶¶ 20, 23; *see also* Smith Decl. ¶ 2.)  The relevant

medical records reflect no such request (Smith Decl. ¶ 3 & Ex. D at 28, 30-31), but Dr.

Smith's declaration indicates that plaintiff would not have been eligible for a bottom

bunk placement in any event.  (Smith Decl. ¶¶ 7–8, Ex. D.)

Plaintiff fell from the top bunk twice, once on June 4, 2007, and again on July

10, 2007.  (Compl. ¶¶ 25, 32; Smith Decl. ¶ 2.)   Plaintiff filed a grievance dated June

4

6, 2007, requesting "proper medical care for my knee and elbow and I'll [sic] like a

bottom bunk pass." (Pl.'s Partial Summ. J. Mot. at Dkt. No. 38 Ex. H.)[6]  Plaintiff

ultimately appealed this grievance to the Central Office Review Committee

("CORC").  (*See* Bellamy Decl. Ex. 1.)  Plaintiff alleges that he was not given a

bottom bunk pass until he had a consultation with a Dr. Caulfield on August 13, 2007.

(Compl. ¶ 34.)  On October 19, 2007, an x-ray report indicated that the distal locking

screw of the metal rod in Plaintiff's leg was fractured.  (Compl. ¶ 38, Smith Decl. ¶ 11,

Pl.'s Partial Summ. J. Mot. at Dkt. No. 38 Ex. G1.)

As to the alleged tampering with plaintiff's legal mail, on August 21, 2007,

plaintiff received some mail without an envelope.  (Compl. ¶ 13.)  Plaintiff filed a

grievance on August 24, 2007, related to the alleged tampering with his legal mail.

(Pl.'s Partial Summ. J. Mot. at Dkt. No. 43 Ex. B.)  Plaintiff alleges that defendant

Turriglio opened the mail, defendants Behrle, Heath and Mizgala neglected to prevent

or correct the tampering, and defendant Roy negligently delegated his responsibility to

investigate plaintiff's grievance.  (Compl. ¶¶ 13–16.)  Plaintiff ultimately appealed his

grievance relating to his mail to the CORC.  (*See* Bellamy Decl. Ex. 1.)

## II.    Summary Judgment

Summary judgment may be granted when the moving party carries its burden of

showing the absence of a genuine issue of material fact.  FED. R. CIV. P. 56; *Thompson

v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted).  "Ambiguities or

---

[6] Plaintiff has filed three separate motions for summary judgment, each with exhibits.  For clarity, the court will reference exhibits by indicating the docket number of the relevant motion and the name of the exhibit given by plaintiff.

inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id*.  However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial.  *Id*.  A dispute about a genuine issue of material fact exists if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  Additionally, while a court "'is not required to consider what the parties fail to point out,'" the court may in its discretion opt to conduct "an assiduous view of the record" even where a party fails to respond to the moving party's statement of material facts.  *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted).

As noted above, plaintiff has filed three separate motions for summary judgment, each as to a different defendant, and defendants have cross-moved for summary judgment.  (Dkt. Nos. 36, 38, 43, 49.)  Thus, the parties all claim that the facts are undisputed and the court may render a judgment as a matter of law.

## III.   Eleventh Amendment

It is well-settled that the state cannot be sued in an action based on section 1983. *Komlosi v. New York State OMRDD*, 64 F.3d 810, 815 (2d Cir. 1995) (citing

*Will v. Michigan Department of Police*, 491 U.S. 58, 71 (1989)).  This holds true whether the court is considering Eleventh Amendment immunity or a statutory interpretation of section 1983.  *Id*. at 815 n.3.  An action against state officers in their official capacities is tantamount to an action against the state.  *Yorktown Medical Laboratory, Inc. v. Perales*, 948 F.2d 84, 87, 88 n.1 (2d Cir. 1991) (citations omitted). *See also Huang v. Johnson*, 251 F.3d 65, 69–70 (2d Cir. 2001); *Posr v. Court Officer Shield #207*, 180 F.3d 409, 414 (2d Cir. 1999).  An agency of the state or a governmental entity is considered an arm of the state for Eleventh Amendment purposes. *Will v. Michigan Dep't of Police*, 491 U.S. at 70. As such, the entity is entitled to the same protection from suit. *Id.*

In this case, plaintiff named DOCS as a defendant as well as the defendants in their "official" capacities.  Defendants correctly argue that, to the extent that plaintiff is suing DOCS or that he is suing defendants in their official capacities for money damages, those causes of action should be dismissed under the Eleventh Amendment. Plaintiff's fourth cause of action must be dismissed in its entirety because it names only DOCS as a defendant, claiming that DOCS failed to properly train its employees.[7]  To the extent the other causes of action in the complaint request damages against the defendants in their official capacities, the court recommends dismissal of those claims.  The court will analyze the remainder of plaintiff's complaint assuming

---

[7] The court notes that pursuant to an order entered by District Judge Lawrence E. Kahn, plaintiff's claim for money damages against DOCS was dismissed.  However, DOCS has not been terminated as a party on the docket.  To the extent any claims remain against DOCS, the court recommends they be dismissed for the reasons stated in this section.

he makes claims against the defendants in their individual capacities.

## IV.    Exhaustion of Administrative Remedies

Defendants argue that plaintiff's has failed to exhaust his administrative remedies regarding any claims that defendant Behrle retaliated against him for the exercise of his constitutional rights.  Under the Prison Litigation Reform Act, ("PLRA"), inmates must exhaust all available administrative remedies before bringing a federal action.  42 U.S.C. § 1997e(a).  Exhaustion is a requirement that applies to all actions about prison life, whether they involve general circumstances or particular episodes and regardless of the claim's subject matter.  *See, e.g.*, *Giano v. Goord*, 380 F.3d 670, 675–76 (2d Cir. 2004).

In *Jones v. Bock*, the Supreme Court held that in order to properly exhaust administrative remedies, an inmate must complete the administrative review process in accordance with the applicable state rules.  549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)).  In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules as a prerequisite to bringing a suit in federal court.  548 U.S. at 90–103.  However, the Court in *Jones* held that proper exhaustion does not necessarily include a requirement that an inmate name all the defendants, unless the state procedure required it.  549 U.S. at 218.

In New York, the grievance procedure is a three-tiered process, with inmates first filing grievances with the Inmate Grievance Resolution Committee ("IGRC"). N.Y. COMP. CODES R. & REGS. tit. 7, §§ 701.5(a)(1) and (b).  The contents of a

grievance "should contain a concise, specific description of the problem" and utilizes a form (Form #2131).  *Id*. § 701.5(a)(2).  Inmates may appeal adverse decisions of the IGRC to the Superintendent of the Facility.  *Id*. at § 701.5(c).  Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC").  *Id*. at § 701.5(d).

When determining whether an inmate has fulfilled the exhaustion requirement, the Second Circuit utilizes a "three part inquiry."  *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004)).  This inquiry examines (1) whether administrative remedies were available; (2) whether defendants' own actions estops them from raising exhaustion as an affirmative defense; and (3) whether special circumstances excuse the inmate's failure to exhaust.  *Id.*

Here, plaintiff filed two grievances that were ultimately appealed to the CORC: one regarding his legal mail (GNE-6615-07) and one regarding his medical treatment (GNE-6629-07). (Def.'s Mem. of Law 4; Bellamy Decl. Ex. 1; Pl.'s Partial Summ. J. Mot. at Dkt. No. 43 Ex. A, B.)  Evidently, administrative remedies were available to plaintiff, and he took advantage of them by filing grievances and appeals.  However, plaintiff failed to file any grievance or seek any administrative relief whatsoever related to his alleged retaliatory transfer.  Plaintiff does not claim that the defendants prevented him from filing a grievance.  After the alleged retaliatory transfer to a new facility, plaintiff would have been able to file his grievance at the new facility, even though it related to the facility where he was previously incarcerated.  N.Y. COMP.

9

Codes R. & Regs., tit. 7 § 701.5(a)(1) (grievances must be filed at the facility where an inmate is housed, "even if it pertains to another facility").

Plaintiff now argues that he "believed a grievance complaint was a facility matter for a [sic] inmate [sic] current place of incarceration [sic]. Plaintiff believe [sic] Superintendent Behrle was exempt from grievance because inmate was no longer at Greene" [sic]. (Pl.'s Mem. of Law at Dkt. No. 51 at 3.) Plaintiff does not argue that he reasonably relied on DOCS regulations, but rather that he relied on his own mistaken belief. This alleged misunderstanding of the grievance process is not a "special circumstance" that would excuse him from filing a grievance. *Boddie v. Bradley*, 228 Fed. Appx. 5; Case No. 06-0899(pr), 2007 U.S. App. LEXIS 3759, at **5; 2007 WL 595247 (2d Cir. Feb. 16, 2006) (holding that failing to utilize the grievance procedure because plaintiff believed that "an initial grievance proceeding could provide no relief for his constitutional claims or for his requests for monetary damages" did not constitute "special circumstances"). Thus, there are no "special circumstances," excusing plaintiff's failure to exhaust his administrative remedies regarding the retaliatory transfer, and this court recommends dismissal of plaintiff's third cause of action for failure to exhaust all administrative remedies.

## V.   Personal Involvement

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citation omitted); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). In *Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir.

1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id. See also Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58 F.3d 865, 873) (2d Cir. 1995)), *rev'd on other grounds*, 129 S. Ct. 1937 (U.S. 2009).

Plaintiff has failed to establish personal involvement for a number of defendants. As to the legal mail issue in his first cause of action, plaintiff has failed to allege direct involvement in the mail tampering by anyone other than defendant Turriglio. In addition, plaintiff alleges his mail was tampered with only once, so he has likewise failed to establish that any resulting wrong was not remedied. Finally, plaintiff has failed to establish that any policy or custom existed which caused the alleged mail tampering or that there was any gross negligence on the part of any supervisory official. Thus, as to plaintiff's first cause of action, related to his legal mail, this court must recommend dismissal as to all defendants except Turriglio.

11

Concerning the medical care issue in his second cause of action, plaintiff only alleges defendant Smith's involvement, independent of any supervisory official. Accordingly, only plaintiff's first cause of action as against defendant Turriglio and plaintiff's second cause of action as against defendant Smith remain for the court to determine.

## VI.   Medical Care

In order to state an Eighth Amendment claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  There are two elements to the deliberate indifference standard.  *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003).  The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind.  *Id.*  at 184 (citing inter alia *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

### A.  Objective Element

In order to meet the objective requirement, the alleged deprivation of adequate medical care must be "sufficiently serious."  *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Determining whether a deprivation is sufficiently serious also involves two inquiries.  *Id.*  The first question is whether the plaintiff was actually deprived of adequate medical care.  *Id.* Prison officials who act "reasonably" in response to the inmates health risk will not be

12

found liable under the Eighth Amendment because the official's duty is only to provide "reasonable care." *Id.* (citing *Farmer*, 511 U.S. at 844–47).

 The second part of the objective test asks whether the inadequacy in the medical care is "sufficiently serious." *Id*. at 280. The court must examine how the care was inadequate and what harm the inadequacy caused or will likely cause the plaintiff. *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 32–33 (1993)). If the "unreasonable care" consists of a failure to provide any treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Id.* (citing *Smith v. Carpenter*, 316 F.3d 178, 185–86 (2d Cir. 2003)). However, where the alleged inadequacy is in the medical treatment that was actually afforded to the inmate, the inquiry is narrower. *Id.* If the plaintiff is receiving ongoing treatment, and the issue is an unreasonable delay or interruption of the treatment, then the "seriousness" inquiry focuses on the challenged delay itself, rather than on the underlying condition alone. *Id.* (citing *Smith*, 316 F.3d at 185). Thus, the court in *Salahuddin* made clear that although courts speak of a "serious medical condition" as the basis for an Eighth Amendment claim, the seriousness of the condition is only one factor in determining whether the deprivation of adequate medical care is sufficiently serious to establish constitutional liability. *Id.* at 280.

## B. Subjective Element

 The second element is subjective and asks whether the official acted with "a sufficiently culpable state of mind." *Salahuddin* 467 F.3d at 280 (citing *Wilson v. Seiter*, 501 U.S. 294, 300 (1991)). In order to meet the second element, plaintiff must

demonstrate more than a "negligent" failure to provide adequate medical care. *Id.* (citing *Farmer*, 511 U.S. at 835–37). Instead, plaintiff must show that the defendant was "deliberately indifferent" to that serious medical condition. *Id*. Deliberate indifference is equivalent to subjective recklessness. *Id.* (citing *Farmer*, 511 U.S. at 839–40).

In order to rise to the level of deliberate indifference, the defendant must have known of and disregarded an excessive risk to the inmate's health or safety. *Id.* (citing *Chance*, 143 F.3d at 702). The defendant must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must draw that inference. *Chance*, 143 F.3d at 702 (citing *Farmer*, 511 U.S. at 837. The defendant must be subjectively aware that his or her conduct creates the risk, however, the defendant may introduce proof that he or she knew the underlying facts, but believed that the risk to which the facts gave rise was "insubstantial or non-existent." *Farmer*, 511 U.S. at 844. Thus, the court stated in *Salahuddin*, that the defendant's believe that his conduct posed no risk of serious harm "need not be sound so long as it is sincere," and "even if objectively unreasonable, a defendant's mental state may be nonculpable." 467 F.3d at 28.

Additionally, a plaintiff's disagreement with a prescribed treatment does not rise to the level of a constitutional claim. *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001). Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Id.* (citations omitted). An inmate does not have the right to treatment of

14

his choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986).  The fact that plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation. *Id.*

Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment.  *Sonds*, 151 F. Supp. 2d at 312 (citing *Estelle*, 429 U.S. at 107).  Even if those medical judgments amount to negligence or malpractice, malpractice does not become a constitutional violation simply because the plaintiff is an inmate.  *Id.  See also Daniels v. Williams*, 474 U.S. 327, 332 (1986) (negligence not actionable under Section 1983).  Thus, any claims of malpractice, or disagreement with treatment are not actionable under Section 1983.

## C.  Application

Plaintiff alleges that defendant Smith was deliberately indifferent to his serious medical need by failing twice to issue Plaintiff a bottom bunk pass, once on March 16, 2007, and once on May 4, 2007.  (Compl. ¶¶ 20, 23; Pl.'s Mem. of Law at Dkt. No. 38 ¶¶ 1, 3–4.)  Plaintiff claims that, as a result of the defendant's conduct, plaintiff fell twice while climbing onto his top bunk, once on June 4, 2007, and once on July 10, 2007[8].  (Compl. ¶¶ 25, 32.)  Plaintiff states that defendant Smith was negligent in

---

[8] The court notes that in Plaintiff's Partial Motion for Summary Judgment as to Defendant Smith, he indicates the date of the second fall as July 12, 2007.  (Pl.'s Mem. of Law at Dkt. 38 ¶ 8.)  This appears to be in error, because in Plaintiff's Partial Motion for Summary Judgment, Plaintiff again refers to July 10, 2007, as the date of his second fall.  (Pl.'s Partial Summ. J. Mot. at Dkt. No. 38 at pg. 2).  This discrepancy in dates does not alter the court's

failing to prevent plaintiff from falling.  (Compl. ¶ 24.)  As stated above, negligence does not rise to the level of a constitutional violation.

Defendant Smith states when she first saw plaintiff on March 16, 2007 and again on May 4, 2007, the examinations were for his asthma problem, and there was no mention of his desire for a bottom bunk assignment.[9]  (Smith Decl. ¶ 3 & Ex. D at 28, 30-31).  Plaintiff's conclusory allegation that he requested a bottom bunk placement from Dr. Smith is insufficient to create a dispute of fact in the face of the sworn declaration and supporting documentary evidence in the record.  *See Benitez v. Pecenco*, 92 Civ. 7670, 1995 WL 444352 at n.5, 1995 U.S. Dist. LEXIS 10431 (S.D.N.Y. July 27, 1995) (plaintiff's conclusory allegation that he was never issued medication was directly contradicted by medical records and was insufficient to create a factual dispute on that issue) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("mere conclusory allegations or denials are insufficient to withstand a motion for summary judgment once the moving party has set forth a documentary case")).[10]

Dr. Smith explains that even if plaintiff had asked for a bottom bunk pass, he did not meet any of the clinical criteria for a bottom bunk on either of those dates.

---

analysis or create a material issue of fact.

[9] Defendant Smith states that she does not specifically recall seeing plaintiff on either of these occasions, but is relying on her Ambulatory Health Record entries. (Smith Decl. ¶ 5).

[10] *See also Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) ("While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff,' . . . and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account." (citation omitted)).

(Smith Decl. ¶¶ 7–8, Ex. 1.)  Exhibit 1 to the Smith declaration is a copy of the DOCS policy regarding lower bunk placement.[11]  Even assuming that Plaintiff had a serious medical need for which he requested a bottom bunk pass from defendant Smith, and that defendant Smith was negligent in failing to grant that request after her first two examinations, her actions would not rise to the level of a constitutional violation.  *See, e.g., Felix-Torres v. Graham*, No. 06-CV-1090, 2009 U.S. Dist. LEXIS 98693, at *29, 2009 WL 3526644 (N.D.N.Y. Oct. 23, 2009) (negligently failing to assign an inmate to a lower bunk does not satisfy the subjective element of the deliberate indifference standard) (collecting cases).

By his own statements, plaintiff fell after he saw defendant Smith, and plaintiff states that he received Tylenol for pain, but emphasizes that medical staff "done [sic] nothing to prevent further injury."  (Pl. Partial Summ. J. Mot. at Dkt. No. 38 ¶ 9.)  His claim that the "medical staff" did not do anything to prevent further injury does not implicate any improper action by defendant Smith.  In addition, on August 13, 2007, another doctor at Greene, Dr. Caulfield, issued plaintiff a bottom bunk pass.  (Smith Decl. ¶ 2).  Defendant Smith did not see plaintiff again until October 11, 2007, after both falls, and after he had already been issued a bottom bunk pass by Dr. Caulfield.

Plaintiff has thus failed to establish an issue of fact regarding his medical care. As a result, this court recommends that plaintiff's second cause of action as to

---

[11] In order for an inmate to be assigned to a bottom bunk, he must: be on medication for a seizure disorder, have diabetes or be insulin dependent, be over 60 years of age, weigh over 300 pounds, have documented back problems through physician review and approval, have a permanent physical disability (e.g. amputee, rheumatoid arthritis), or have a diagnosis of sleep apnea. (Smith Decl. Ex. 1).

defendant Smith be dismissed.

## VII.   Access to the Courts

In order to establish a claim that a prisoner's right of access to the courts has

been abrogated, actual injury must be shown.  *See Lewis v. Casey*, 518 U.S. 343

(1996).  The First and Fourteenth Amendments to the U.S. Constitution are implicated

when a prisoner's mail is interfered with, but a plaintiff must allege that the

defendants' actions hindered the prisoner's "efforts to pursue a legal claim."  *See*

*Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (citing *Monsky v. Moraghan*, 127

F.3d 243, 247 (2d. Cir. 1997).

Prior to the Supreme Court's decision in *Lewis*, the Second Circuit had held that

"an isolated instance" of interference with an inmate's legal mail delivery was

insufficient to state a First Amendment claim, either with respect to the mail itself or

with respect to access to courts, where "the infraction was not in accordance with

official policy or practice and where no showing had been made that the inmate's right

to access to courts was chilled . . . ."  *Washington v. James*, 782 F.2d 1134, 1139 (2d.

Cir. 1986) (citation omitted).  *Lewis* also requires that the actual harm must be to

direct or collateral attacks on the inmate's conviction, or to a challenge to the

conditions of confinement.  518 U.S. at 355.  "Mere 'delay in being able to work on

one's legal action or communicate with the courts does not rise to the level of a

constitutional violation.'" *Davis v. Goord*, 320 F.3d at 352 (citing *Jermosen v.*

*Coughlin*, 877 F.Supp. 864, 871 (S.D.N.Y. 1995).

Here, plaintiff alleges that because he received some legal mail without an

envelope on August 21, 2007, "defendant Turriglio unlawfully opened/tampered with this Legal mail in order to obstruct plaintiff's access to the court . . . ." (Compl. ¶ 13). Because plaintiff only claims one incident of tampering, even assuming defendant Turriglio *did* open plaintiff's legal mail, Turriglio's alleged conduct would not rise to the level of a constitutional violation.

In addition, plaintiff's allegations of "injury in two separate court houses" as a result of defendant Turriglio's actions are patently false. (Pl.'s Partial Summ. J. Mot. at Dkt. No. 36 pg. 1.) Plaintiff appears to argue that somehow through this alleged tampering, defendant Turriglio was able to be successful against plaintiff in a case that plaintiff filed against him that was pending in the Northern District of New York (Case No. 07-CV-650). *Id*. at 1–2.

An examination of the docket in that case reveals that defendant Turriglio filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on August 2, 2007, before the incident of alleged mail tampering at issue here. (Dkt. No. 11 in Case No. 07-CV-650.) Plaintiff had until September 20, 2007 to respond to the motion to dismiss, and pursuant to a letter from Plaintiff filed on September 11, 2007, the deadline was extended to October 19, 2007.[12] (Dkt. Nos. 13 & 17 in Case No. 07-CV-650.) Plaintiff's access to the court was not hindered, and the Report and Recommendation filed by Judge Lowe on March 17, 2008, decided plaintiff's case on the merits.[13] (Dkt.

---

[12] The court also notes that another letter was filed by Plaintiff on August 29, 2007, only eight days after the alleged tampering with his mail.

[13] Plaintiff did not object to the Report and Recommendation, which was adopted in its entirety pursuant to an order entered by Chief Judge Mordue on April 15, 2008. *See generally*

No. 20 in Case No. 07-CV-650.)

Plaintiff also appears to argue that his pending case in the Southern District of New York was somehow dismissed due to defendant Turriglio's actions. (Pl.'s Partial Summ. J. Mot. at Dkt. No. 36 pg. 1.)  In the Southern District case, plaintiff had been instructed to file an amended complaint within 60 days of an order entered by Judge Wood on May 31, 2007.  (Dkt. No. 3 in SDNY Case No. 07-CV-4576.)  Plaintiff complied with that order and filed an amended complaint on July 3, 2007.  (Dkt. No. 4 in Case No. 07-CV-4576.)  No further deadlines were pending as of August 21, 2007.[14]  Plaintiff's case in the Southern District of New York was dismissed pursuant to his own motion filed on July 28, 2008.  (Dkt. Nos. 10 & 11 in Case No. 07-CV-4576.)

Clearly, plaintiff complains of only one incident of mail tampering, and that incident did not hinder his access to the two federal courts in which he had actions pending.  No issue of fact has been established as to plaintiff's cause of action alleging interference with his legal correspondence and denial of access to the courts. Accordingly, this court must recommend dismissal of plaintiff's first cause of action.

## VI.    Qualified Immunity

Defendants argue that they are entitled to qualified immunity, which protects

---

*McCloud v. Tureglio [sic]*, No. 07-CV-650 2008, U.S. Dist. LEXIS 30984; 2008 WL 1772305 (N.D.N.Y. April 15, 2008).

[14] The court is aware that an order of partial dismissal was entered by Judge Wood on August 20, 2007.  (Dkt. No. 5 in Case No. 07-CV-4576.)  It appears Plaintiff was trying to sue Greene Correctional Facility defendants in the Southern District of New York.

government officials when performing their discretionary functions when "their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).  Defendants here did not violate a constitutional right, so the court need not address qualified immunity.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that plaintiff's motions for partial summary judgment (Dkt. Nos. 36, 38, & 43) be **DENIED**, and it is further

**RECOMMENDED**, that defendants' cross-motion for summary judgment (Dkt. No. 49) be **GRANTED**, and the complaint be **DISMISSED IN ITS ENTIRETY.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

February 22, 2010

**Hon. Andrew T. Baxter**
**U.S. Magistrate Judge**

21